942 P.2d 351 (1997)
133 Wash.2d 80
Joan DUKE, Appellant,
v.
Dr. Herschell BOYD and Marili Boyd, husband and wife, Respondents.
No. 64099-8.
Supreme Court of Washington. En Banc.
Argued January 22, 1997.
Decided August 21, 1997.
Debra Stephens, Bryan Harnetiaux, Spokane, Harbaugh & Bloom, Gary N. Bloom, Spokane, amicus curiae on Behalf of Washington State Trial Lawyers.
Thorsrud, Cane & Paulich, Russell C. Love, Seattle, amicus curiae on Behalf of Washington Defense Trial Lawyers.
David A. Middaugh, Seattle, for Appellant.
Lee, Smart, Cook, Martin & Patterson, John P. Cook, Lisa Hollomon, Seattle, Merrick, Hofstedt & Lindsey, P.S., Allan Baris, Seattle, for Respondent.
DOLLIVER, Justice.
This case involves the statute of limitation for medical malpractice cases. The trial court dismissed Plaintiff's medical malpractice action against Defendant, an ophthalmologist, since the suit was filed nearly 10 years after the last eye surgery. Because Defendant's *352 post-surgical representations to Plaintiff allegedly constituted intentional concealment of Defendant's negligence, we reverse and remand for trial.
Plaintiff, Joan Duke, received eye care from Dr. Herschell Boyd from 1974 until 1992. Between 1974 and 1983, Duke saw Boyd for eye examinations and to obtain prescriptions for eye glasses and contact lenses. In 1983, Duke saw a brochure in Boyd's office describing a surgical procedure called radial keratotomy. Duke and Boyd discussed the procedure, and Boyd told her the procedure could be used to correct her nearsightedness and astigmatism. Boyd allegedly represented numerous times that the surgery was effective and could result in perfect or near perfect vision. Boyd allegedly did not disclose that the procedure could cause numerous unfavorable side effects.
Boyd performed nine surgeries on Duke's left eye between 1983 and 1985. The last surgery was August 28, 1985, and the results were unsatisfactory: Duke still had to wear a hard contact lens to correct her vision. The surgery also allegedly damaged her left eye. When Duke questioned Boyd as to why her vision had not improved as promised, Boyd allegedly responded that she was the only patient who did not react positively to the procedure, and he implied or stated that her case was simply an unexplainable or unique phenomenon.
Duke consulted with two different attorneys after the unsuccessful surgeries to discuss the possibility of a malpractice action. Both attorneys explained that bad results did not necessarily indicate negligence. Duke, being a registered nurse, realized that unpromising medical results sometimes happened without a doctor's negligence. She took no further action regarding the unsuccessful surgeries, and she continued to see Boyd for eye exams and lens prescriptions until 1992.
In November 1994, Duke saw a television program mentioning Boyd and radial keratotomy. The show apparently disclosed many of Boyd's patients had unfavorable results from the expensive procedure. Duke realized Boyd's statements regarding the uniqueness of her unfavorable results were untrue, and she contacted an attorney. This lawsuit was filed just months later, in February 1995.
Boyd motioned for summary judgment, arguing Duke's lawsuit, filed nearly 10 years after the last surgery, was untimely under RCW 4.16.350. Duke argued Boyd's misrepresentations and outright lies constituted fraud and intentional concealment, which tolled the statute of limitation. The trial court granted summary judgment for Boyd, and this court accepted direct review.
Since this is an appeal from summary judgment for Defendant, we must view the allegations in a light most favorable to Plaintiff. See Marquis v. City of Spokane, 130 Wash.2d 97, 105, 922 P.2d 43 (1996). The only issue before us concerns the impact of RCW 4.16.350 in a case of alleged fraud and intentional concealment. Whether Duke can prove fraud or intentional concealment is a question of fact for the trier of fact to resolve. See Douglas Northwest, Inc. v. Bill O'Brien & Sons Constr., Inc., 64 Wash.App. 661, 678, 828 P.2d 565 (1992) ("Each element of fraud is a material issue to be resolved and must be proven by clear, cogent and convincing evidence[.]").
RCW 4.16.350 states medical malpractice actions
shall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission: PROVIDED, That the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect.
For ease of analysis, the quoted language can be condensed into this simple outline:
Medical malpractice actions must be brought
*353 (A) in the later of the following two periods:
(1) within three years of the act causing the injury, or
(2) within one year of the plaintiff having actual or constructive knowledge of the injury,
but no actions shall be allowed if filed more than eight years after the act causing injury.
(B) The time for commencement of an action is tolled if the plaintiff proves fraud, intentional concealment, or the presence of a foreign object.
The clause providing for tolling of the time limit will be referred to as the "proviso."
Neither party disputes the meaning of the word, "tolled," as used by the proviso. The applicable definition from Webster's Third New International Dictionary 2405 (1971) defines toll as "to take away: make null: REMOVE see Gilbert v. Sacred Heart Med. Ctr., 127 Wash.2d 370, 376, 900 P.2d 552 (1995), and all three are encompassed by the proviso's clause, "time for commencement of an action." RCW 4.16.350. If a plaintiff proves fraud or intentional concealment, the proviso suspends operation of all limitation periods listed in RCW 4.16.350. As discussed below, the parties mainly dispute whether the statute of limitation is reinstated by any event.
Duke argues RCW 4.16.350 indefinitely tolls the statute of limitation if she shows proof of such fraud or intentional concealment. She claims that, once fraud is proven, Boyd cannot use the statute of limitation as an affirmative defense to block the lawsuit.
Boyd argues the proviso only tolls the statute of limitation for so long as the plaintiff is unaware of the fraud or intentional concealment. Boyd claims the statute of limitation begins to run again once the plaintiff obtains actual or constructive knowledge of the fraud or intentional concealment, allowing a plaintiff one year to file the lawsuit after obtaining such knowledge. Boyd does not point to any language within the statute to support his reading.
Although the result seems extreme, Duke's interpretation of the statute is absolutely consistent with the literal impact of the language in the proviso. The proviso states, "the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body...." RCW 4.16.350. If a plaintiff proves fraud or intentional concealment in court, the proviso explicitly tolls the "time for commencement of an action," and a defendant cannot raise RCW 4.16.350 as an affirmative defense. The statutory language provides nothing further. No language in the statute provides for an end of the tolling. Nothing in the proviso implies that some event restarts the limitation clock. In other words, even if a plaintiff, at some point, obtains actual or constructive knowledge of the fraud or intentional concealment and discovers the cause of action, the plaintiff still has no duty, under the express language of the statute, to bring the action within any period of time after obtaining that knowledge.
In other statutes of limitation containing tolling provisions, the Legislature has plainly indicated what conditions, if any, restart the limitation clock. See, e.g., RCW 4.16.180 (time while person is concealed within or absent from the state is not considered part of the limitation period); RCW 4.16.190 (time while person is disabled is not part of the limitation period); RCW 4.16.210 (time while country is in war is not part of the limitation period). In contrast to these cited statutes, RCW 4.16.350 does not limit the tolling effect to the time while a plaintiff is unaware of the fraud, intentional concealment, or presence of a foreign object. If the Legislature wanted to limit the tolling, it clearly knows how to do so. As written, the proviso indefinitely suspends the statute of limitation in cases where fraud, intentional concealment, or the presence of a foreign object is proved.
When a statute is ambiguous, courts will look to legislative intent to help determine the meaning of the statute. We find no *354 ambiguity in the proviso. The proviso's language is clear on the issue of tolling. Nonetheless, we note that our reading of the language is supported by the only evidence of legislative intent regarding the proviso. The original bill debated by the Senate did not contain the proviso, but Senator Metcalf moved to amend the bill by including, among other things, a nearly identical proviso. See Senate Journal, 49th Legislature (1986), at 490-91. Although Senator Metcalf's motion to include the language was denied by a majority of the Senate, the final version of the bill, as approved by both the House and Senate and as codified in the Revised Code of Washington, includes a proviso substantially identical to the one proposed by Senator Metcalf. Because the language of the bill as enacted is essentially identical to the language proposed by Senator Metcalf, his statements regarding the effect of that language are relevant to the question of legislative intent. He said:
There is a time when there is no limit on malpractice and that is lines 30 thru 37. That is, in the case of fraud, intentional concealment, or the presence in the injured person of a foreign bodyif a doctor left a clamp inside, then there is no statute of limitations on that.
Senate Journal at 491. His statement that there is no statute of limitation in cases of fraud or intentional concealment supports the literal reading of RCW 4.16.350 that proof of fraud or intentional concealment permanently suspends the statute of limitation.
Normally, one legislator's comments from the floor are considered inadequate to establish legislative intent. See In re F.D. Processing, Inc., 119 Wash.2d 452, 461, 832 P.2d 1303 (1992). The legislative record, however, does not reflect any contrary intent to Senator Metcalf's statement, and we presume Senator Metcalf understood the meaning of the amendment which he proposed. See In re Marriage of Kovacs, 121 Wash.2d 795, 807-08, 854 P.2d 629 (1993).
The purpose of statutory interpretation is to determine and give effect to legislative intent. See In re Electric Lightwave, Inc., 123 Wash.2d 530, 536, 869 P.2d 1045 (1994). The legislative intent should be derived primarily from the statutory language. See Electric Lightwave, Inc., 123 Wash.2d at 536, 869 P.2d 1045; Everett Concrete Prods., Inc. v. Department of Labor & Indus., 109 Wash.2d 819, 822, 748 P.2d 1112 (1988). When the words in a statute are clear and unequivocal, this court is required to assume the Legislature meant exactly what it said and apply the statute as written. See King County v. Taxpayers of King County, 104 Wash.2d 1, 5, 700 P.2d 1143 (1985). Although the court should not construe statutory language so as to result in absurd or strained consequences, see Wright v. Engum, 124 Wash.2d 343, 351, 878 P.2d 1198 (1994), neither should the court question the wisdom of a statute even though its results seem unduly harsh. See Geschwind v. Flanagan, 121 Wash.2d 833, 841, 854 P.2d 1061 (1993).
It may seem unduly harsh to suspend permanently the statute of limitation when doctors engage in fraud or intentional concealment. Regardless, we cannot question the wisdom of this policy, and we must enforce the statute as written. See Geschwind, 121 Wash.2d at 841, 854 P.2d 1061. It is clear from the House and Senate Journals that the proviso was inserted into the tort reform bill with no discussion other than Senator Metcalf's isolated statement. See Senate Journal at 442-98, 1473-87; House Journal, 49th Legislature (1986), at 1035-82. If the Legislature dislikes the impact of the statute as it enacted it, the Legislature, and not this court, has the responsibility to change it. See Gilbert v. Sacred Heart Med. Ctr., 127 Wash.2d 370, 386, 900 P.2d 552 (1995) (Durham, C.J., dissenting) ("However, it is not this court's role to provide counterpoint to the Legislature's decisions on matters of policy."); U.S. Oil & Refining Co. v. Department of Ecology, 96 Wash.2d 85, 95, 633 P.2d 1329 (1981) (Dolliver, J., dissenting) (legislation should be done by the state legislature).
We remand this action to the trial court. If Duke proves Boyd fraudulently or intentionally concealed her cause of action, then Boyd cannot raise RCW 4.16.350 as an affirmative defense.
SMITH, JOHNSON, MADSEN and SANDERS, JJ., concur.
*355 DURHAM, Chief Justice, concurring.
I agree with Justice Talmadge that the Legislature did not intend the tolling provision of RCW 4.16.350 to suspend the limitation period after a plaintiff discovers the essential facts of a cause of action. However, I do not agree that the limitation period should be tolled until the plaintiff actually knows the essential facts. An interpretation of RCW 4.16.350 under which the limitation period is tolled until the plaintiff knows or should know the essential facts is more consistent with our prior cases applying the discovery rule and with the language of the statute.
Our prior cases require a plaintiff to exercise due diligence in the discovery of facts giving rise to a cause of action. Under our discovery rule, a cause of action accrues, and a limitation period begins to run, when the plaintiff knows or should know the essential facts. In re Estates of Hibbard, 118 Wash.2d 737, 752, 826 P.2d 690 (1992); Allen v. State, 118 Wash.2d 753, 758, 826 P.2d 200 (1992). Similarly, RCW 4.16.350 permits a cause of action to be brought within a maximum of eight years as long as the claim is brought within one year after the plaintiff discovered or reasonably should have discovered the essential facts. See Adcox v. Children's Orthopedic Hosp. & Med. Ctr., 123 Wash.2d 15, 34-35, 864 P.2d 921 (1993).
Under RCW 4.16.350, intentional concealment will toll the limitation period beyond the otherwise applicable eight-year maximum. However, to be consistent with the one-year discovery rule in RCW 4.16.350 and our prior cases applying the discovery rule, I would hold that, where the essential facts of a cause of action for medical malpractice are intentionally concealed, the limitation period in RCW 4.16.350 is tolled only until the plaintiff knows or should know the essential facts.
TALMADGE, Justice, concurring.
I agree with the majority that the trial court erred in granting a summary judgment in favor of the defendant, Dr. Herschell Boyd, dismissing plaintiff Joan Duke's medical malpractice claim. However, I cannot agree the proviso to RCW 4.16.350 eliminates all limitation and repose periods for professional negligence claims where allegations of fraud, intentional concealment, or the presence of a foreign body are present.
Properly interpreted, the proviso to RCW 4.16.350 is more narrow in its scope and provides for the tolling of all limitation and repose periods by a defendant's fraud or intentional concealment of any professional negligence or when a foreign object is present in the plaintiff's body. The limitation and repose periods of the statute resume when the plaintiff knows of facts giving rise to his or her cause of action for professional negligence against the health care practitioner.
RCW 4.16.350 states that medical malpractice actions
... [s]hall be commenced within three years of the act or omission alleged to have caused the injury or condition, or one year of the time the patient or his representative discovered or reasonably should have discovered that the injury or condition was caused by said act or omission, whichever period expires later, except that in no event shall an action be commenced more than eight years after said act or omission: PROVIDED, That the time for commencement of an action is tolled upon proof of fraud, intentional concealment, or the presence of a foreign body not intended to have a therapeutic or diagnostic purpose or effect.
Under our rules of statutory construction, where several different reasonable interpretations of the statute exist, the statute is ambiguous and requires construction by the courts to effectuate the intent of the Legislature. State v. Bash, 130 Wash.2d 594, 601, 925 P.2d 978 (1996); Whatcom County v. City of Bellingham, 128 Wash.2d 537, 547, 909 P.2d 1303 (1996).
The proviso to RCW 4.16.350 is ambiguous in several different respects. First, the language of the statute does not indicate whether there must be a connection between the intentional concealment or fraud and the cause of action for professional negligence itself. Arguably, if the physician engaged in some fraudulent conduct unconnected with medical treatment, such as improper billing, the limitation and repose periods for malpractice would be suspended indefinitely. The Legislature never intended this result.
*356 Moreover, the statute is ambiguous in its reference to tolling. It is unclear whether the reference to tolling means that, upon the occurrence of certain future circumstances, the statutory limitation and repose periods contained in RCW 4.16.350 resume. Normally, "tolling" is a term of art referring to the temporary suspension of statutory limitation periods because of either some "disability" on the part of the plaintiff preventing the plaintiff from commencing the action or some activity on the part of the defendant forestalling prosecution of the claim against the defendant.[1] For example, RCW 4.16.180 tolls limitation periods for any time a defendant is out of state or concealed within the state of Washington. In Summerrise v. Stephens, 75 Wash.2d 808, 811, 454 P.2d 224 (1969), we summarized the purpose of the tolling feature of the statute:
The rationale of the tolling statute is that every absence from the state (or a period of hiding or concealment within the state) which prevents a plaintiff from making a service upon a defendantthat would give our courts an in personam jurisdiction should be excluded in computing the time within which a plaintiff must commence his action.
See also RCW 4.16.190 (limitations tolled by minority, incompetency, disability, or imprisonment); RCW 4.16.200 (death of plaintiff or defendant); RCW 4.16.210 (war and plaintiff or defendant is foreign national); RCW 4.16.220 (defendant is in military service); RCW 4.16.230 (action stayed by judicial proceedings).
The removal of the condition or disability which tolls the statutory limitation period usually causes the limitation period to resume; in effect, the clock starts to tick again for purposes of the statute of limitations.[2] Thus, for example, the statute of limitations starts to run against a minor under RCW 4.16.190 when the minor reaches the age of majority. See, e.g., Tyson v. Tyson, 107 Wash.2d 72, 74, 727 P.2d 226 (1986); McMillan v. Walker, 48 Wash. 342, 93 P. 520 (1908); St. Michelle v. Robinson, 52 Wash. App. 309, 311, 759 P.2d 467 (1988).
In Seamans v. Walgren, 82 Wash.2d 771, 775, 514 P.2d 166 (1973), we held that RCW 4.16.230 tolled the statute of limitations for a professional negligence claim against a legislator who was immune from service of process during a legislative session by constitutional provision:
When a person is prevented from exercising his legal remedy by some positive rule of law, the time during which he is prevented from bringing suit is not to be counted against him in determining whether the statute of limitations has barred his right even though the statute makes no specific exception in his favor in such cases.

(Emphasis supplied.)
Finally, RCW 4.16.350 has limitation and repose elements. See Gilbert v. Sacred Heart Med. Ctr., 127 Wash.2d 370, 378 n. 1, 900 P.2d 552 (1995) (Durham, J., dissenting). The proviso speaks in terms of tolling the time for commencement of an action. Normally, a statute of limitations bars presentation of a claim that has already accrued after a specified time period; a statute of repose bars a claim after a specified time even if the claim has not accrued or the injury has not occurred. Rice v. Dow Chem. Co., 124 Wash.2d 205, 211-12, 875 P.2d 1213 (1994). To the extent that RCW 4.16.350 contains the eight-year repose period, the proviso could be read to apply solely to the statute of limitations, that is, the three-year and one-year periods for commencement of an action, rather than the eight-year repose period set forth in the law.
*357 Despite these reasonable alternative interpretations of the proviso, the majority chooses to apply the language of the proviso in its most literal sense, holding that the presence of fraud, intentional concealment, or a foreign object in the body of the plaintiff forever suspends any limitation and repose periods for a claim of health care professional negligence. The majority finds support for its view in the remarks of a single legislator. However, not only was this legislator's proposal defeated, but he does not necessarily represent the views of the entire Legislature.[3]
The amendments to RCW 4.16.350 were undertaken in the context of an overall 1986 Tort Reform Act, whose essential purpose was to limit causes of action for injured plaintiffs, thereby reducing liability for local governments, professionals such as health care providers, and businesses, and theoretically causing liability insurance to be more available and affordable. Laws of 1986, ch. 305, § 100. See also Basil L. Badley, Why Tort Reform Was Needed in Washington, 22 GONZ. L. REV. 1 (1986/87). It is difficult to reconcile the purpose of the 1986 Tort Reform Act with an interpretation of the statute which provides for an indefinite suspension of any statutory limitation and repose period for claims of medical malpractice.
The Legislature chose the term "tolling" cognizant of its particular meaning under Washington case law. "[T]he Legislature is presumed to know the existing state of the case law in those areas in which it is legislating and a statute will not be construed in derogation of the common law unless the Legislature has clearly expressed its intention to vary it." Price v. Kitsap Transit, 125 Wash.2d 456, 463, 886 P.2d 556 (1994). Tolling means the statutory limitation periods are suspended because a condition, such as the plaintiff's minority or incapacity, or a situation, such as the defendant's absence or concealment, prevent commencement of the action. Once the disability or condition has disappeared, the statutory limitation periods resume. See Seamans, 82 Wash.2d at 775, 514 P.2d 166.
Although the majority believes the limitation and repose periods never resume, most of the parties and amici generally disagree on this question. Amicus Washington Defense Trial Lawyers Association contends the plaintiff cannot claim intentional concealment or fraud beyond the end of the physician-patient relationship, relying on Quinn v. Connelly, 63 Wash.App. 733, 821 P.2d 1256, review denied, 118 Wash.2d 1028, 828 P.2d 563 (1992). Quinn, however, is distinguishable. The Court of Appeals stated that attorney negligence is unlike the provision of other professional services in that the damages resulting from attorney negligence in litigation are embodied in the court's judgment. Parties are on notice, as a matter of law, from the entry of the judgment of any damages from the negligence and a client, therefore, "possesses knowledge of all the facts which may give rise to his or her cause of action for negligent representation." Quinn, 63 Wash.App. at 736, 821 P.2d 1256. This is plainly not true for health care.
*358 Moreover, this rule would be unwise in the context of the proviso to RCW 4.16.350. If, for example, a surgeon left an instrument in the body of the patient, the tolling effect of the proviso would be lost upon the surgeon's completion of the surgery and the postoperative care of the patient. This would make little sense. The tolling provision relates to the ability of the plaintiff to discover facts giving rise to the cause of action for professional negligence against the health care practitioner. This has nothing to do with the question of the duration of the physician-patient relationship. Indeed, if a surgeon left an instrument in the plaintiff's body, the limitations period should again resume if the presence of the object is later revealed through an x-ray or other examination placing the plaintiff on notice of the problem.
Amicus Washington State Trial Lawyers Association argues the statutory period should resume when the plaintiff has actual knowledge of the fraud, intentional concealment or the presence of a foreign object in the patient's body. This formulation appears to focus on the plaintiff's knowledge of the tolling condition rather than the facts giving rise to the plaintiff's cause of action for professional negligence.
A proper interpretation of the proviso to RCW 4.16.350 is that the statute's limitation and repose periods[4] are tolled by fraud, intentional concealment, or the presence of a foreign object in the patient's body preventing the plaintiff from learning of the facts giving rise to a cause of action for professional negligence against the health care practitioner. But, once a plaintiff learns of the existence of facts giving rise to a cause of action for medical malpractice, notwithstanding the fraud, intentional concealment, or presence of a foreign object in the body, the limitation and repose periods in RCW 4.16.350 resume. The effect of fraud or intentional concealment is obviated once the plaintiff discovers the facts giving rise to his or her cause of action for professional negligence against the health care professional. It is at that point that the limitation and repose periods in RCW 4.16.350 should again resume.
In the present case, in light of the principles enunciated above, the trial court erred in granting summary judgment to Dr. Boyd. There is a fact question here regarding when plaintiff Duke knew of the facts giving rise to her cause of action for professional negligence against Dr. Boyd. If we take the facts and reasonable inferences from those facts in a light most favorable to plaintiff Duke as the nonmoving party on summary judgment, Schaaf v. Highfield, 127 Wash.2d 17, 21, 896 P.2d 665 (1995), the limitation and repose periods of RCW 4.16.350 may have been tolled from 1983 until 1994, when she learned that other individuals had claims against Dr. Boyd for his performance of her radial keratotomy procedures. Dr. Boyd's alleged fraud in advising Ms. Duke that only she had unsatisfactory results or that conditions peculiar to her prevented the effectiveness of the radial keratotomy surgery was obviated by the knowledge she acquired from the television broadcast regarding Dr. Boyd's surgical practices.
The majority's interpretation of the proviso to RCW 4.16.350 eliminating all limitation and repose periods for professional negligence claims where the health care professional has engaged in fraud or intentional concealment, or has left a foreign object in the plaintiff's body, is too hypertechnical a reading of a floor amendment to the 1986 Tort Reform Act and will invite further legislative tinkering with RCW 4.16.350. Given the long legislative history of tinkering with this limitation and repose periods for medical malpractice claims,[5] it is not difficult to envision even more truncated statutory limitation and repose periods as a likely result of such legislative handiwork.
ALEXANDER and GUY, JJ., concur.
NOTES
[1] See Black's Law Dictionary (5th ed.1979) at 1334, defining toll as follows:

To suspend or stop temporarily as the statute of limitations is tolled during the defendant's absence from the jurisdiction and during the plaintiff's minority.
(Emphasis added.)
[2] RCW 4.16.160 provides that there is no limitation period for claims brought in the name of or for the benefit of the state. Bellevue Sch. Dist. No. 405 v. Brazier Constr. Co., 100 Wash.2d 776, 675 P.2d 232, adhered to, 103 Wash.2d 111, 691 P.2d 178 (1984). This appears to be the only instance where no limitation periods apply to claims, but this situation is not directly relevant to tolling of limitation periods. However, the Legislature overruled Bellevue Sch. Dist. in 1986. See Laws of 1986, ch. 305, § 702.
[3] The majority gives credence to the floor remarks of Senator Metcalf, majority op. at 353-54, whose Senate floor amendment was defeated, see Senate Journal (34th day, February 15, 1986) at 490-93, but appeared, in modified form, in the House Amendment to ESSB 4630, see House Journal, 1986 reg. sess., at 1059 and 1068, and ultimately was enacted as the proviso to RCW 4.16.350, see 1986 Wash. Laws ch. 305 § 502 at 1362.

While Senator Metcalf's remarks are noteworthy, I do not believe the opinion of one legislator who was neither the sponsor of the bill or the actual amendment that became law, nor the chair or member of the Committee through which the bill passed is persuasive as to the intent of the entire Legislature. See, e.g., North Coast Air Servs., Ltd. v. Grumman Corp., 111 Wash.2d 315, 325-27, 759 P.2d 405 (1988).
Furthermore, it is not clear that Senator Metcalf's remarks necessarily support the majority's view. Senator Metcalf's floor amendment proposed to replace the three-year/one-year limitations and eight-year repose period with an eight-year limitation period. The eight-year period was suspended only by fraud, intentional concealment, or the presence of a foreign object. Senate Journal, 1986 reg. sess., at 490-91.
The proviso to RCW 4.16.350 ultimately enacted by the Legislature retained the original limitation and repose periods of RCW 4.16.350, evidencing a legislative intent not to dispense with those periods for health care professional negligence cases.
[4] Both the limitation and repose periods are tolled because we have previously held that these periods are linked in the statute. Gilbert, 127 Wash.2d at 376, 900 P.2d 552. The majority here also so holds. Majority op. at 353.
[5] See Gilbert, 127 Wash.2d at 383-85, 900 P.2d 552 (Durham, J., dissenting) (discussing legislative history of RCW 4.16.350).